UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DWAYNE KOMURKE,<br><br>                    Plaintiff,<br><br>          v.<br><br>AERPIO PHARMACEUTICALS INC.,<br>STEVEN PRELACK, CALEY CASTELEIN,<br>CHERYL COHEN, ANUPAM DALAL,<br>PRAVIN DUGEL, ASPEN MERGER<br>SUBSIDIARY, INC., and AADI<br>BIOSCIENCE, INC.,<br><br>                    Defendants. | Case No.:<br><br>COMPLAINT FOR:<br><br>(1)  Breach of Fiduciary Duties<br>(2)  Aiding and Abetting Breach of<br>      Fiduciary Duties<br>(3)  Violation of § 14 (a) of the Securities<br>      Exchange Act of 1934<br>(4)  Violation of § 20(a) of the Securities<br>      Exchange Act of 1934<br><br>DEMAND FOR JURY TRIAL |

Plaintiff, Dwayne Komurke ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

## SUMMARY OF THE ACTION

1.     Plaintiff brings this stockholder action against Aerpio Pharmaceuticals, Inc. ("Aerpio" or the "Company"), the Company's Board of Directors (the "Board" or the "Individual Defendants"), Aadi Bioscience, Inc. ("Parent"), through Aspen Merger Subsidiary, Inc. ("Merger Sub," and together with Parent, "Aadi," and with Aerpio and Individual Defendants, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act"), and for breaches of fiduciary duty as a result of the Individual Defendants' efforts to sell the Company to Aadi as a result of an unfair process for an unfair price, and to enjoin an upcoming stockholder vote on an all stock proposed transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a May 17, 2021, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement").   Under the terms of the Merger Agreement, shareholders of Aadi will receive shares of newly issued Aerpio common stock in a reverse merger, where shareholders of Aadi will own approximately 66.8% and shareholders of Aerpio will own approximately 33.2% of the combined company. Following the closing of the concurrent PIPE financing, Aerpio shareholders will own approximately 14.7% of the combined company.

3.      Thereafter, on June 21, 2021, Aerpio filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      Plaintiff alleges that the Individual Defendants (defined herein) have breached their fiduciary duties by agreeing to the Proposed Transaction based on a flawed process which will result in inadequate compensation for Plaintiff in his capacity as a Company stockholder.  As such, Plaintiff is entitled to enjoin the Proposed Transaction or, alternatively, to recover damages in the event that the transaction is consummated.

5.      The dubious nature of the Proposed Transaction is laid bare considering the complete lack of merger consideration provided to Aerpio stockholders.  Notably the only effect that the consummation of the Proposed Transaction will have on Plaintiff's shares of Aerpio is to make them less valuable by diluting them.  Specifically, the entirety of the merger consideration will be composed of new stock of Aadi after it is transformed from a non-public company into a public company through the Proposed Transaction.

6.      In approving the Proposed Transaction, the Individual Defendants have breached

their fiduciary duties of loyalty, good faith, due care and disclosure by, *inter alia*, (i) agreeing to sell Aerpio without first taking steps to ensure that Plaintiff in his capacity as a Company public stockholder would obtain adequate, fair and maximum consideration under the circumstances; and (ii) engineering the Proposed Transaction to benefit themselves and/or Aadi without regard for Aerpio public stockholders. Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff and other Aerpio stockholders.

7.    Next, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders. For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

8.    In violation of their fiduciary duties, Defendants caused to be filed the materially deficient Preliminary Proxy Statement on June 21, 2021 with the SEC in an effort to Plaintiff, to vote in favor of the Proposed Transaction. The Preliminary Proxy Statement is materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in breach of Defendants fiduciary duties. As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Aerpio and Aadi, provided by Aerpio and Aadi to the Board's financial advisor Ladenburg Thalmann & Co. Inc. ("Ladenburg"); and (c) the data and inputs underlying the financial valuation analyses, if any,

that purport to support the fairness opinions created by Ladenburg and provide to the Company and the Board.

9.      Accordingly, this action seeks to enjoin the Proposed Transaction and compel the Individual Defendants to properly exercise their fiduciary duties to Plaintiff.

10.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction or, in the event the Proposed Transaction is consummated, to recover damages resulting from the breaches of fiduciary duties by Defendants.

## PARTIES

11.     Plaintiff is a citizen of Texas and, at all times relevant hereto, has been a Aerpio stockholder.

12.     Defendant is a biopharmaceutical company focused on developing compounds that activate Tie2 for indications in which Aerpio believes that activation of Tie2 may have therapeutic potential.  Aerpio is incorporated under the laws of the State of Delaware and has its principal place of business at 9987 Carver Road, Cincinnati, OH 45242.  Shares of Aerpio common stock are traded on the Nasdaq Stock Exchange under the symbol "ARPO."

13.     Defendant Steven Prelack ("Prelack") has been a Director of the Company at all relevant times.  In addition, Prelack serves as the Company's Chairperson of the Board.

14.     Defendant Caley Castelein ("Castelein") has been a director of the Company at all relevant times.

15.     Defendant Cheryl Cohen ("Cohen") has been a director of the Company at all relevant times.

16.     Defendant Anupam Dalal ("Dalal") has been a director of the Company at all

relevant times.

17.     Defendant Pravin Dugel ("Dugel") has been a director of the Company at all relevant times.

18.     Defendants identified in ¶¶ 13 - 17 are collectively referred to as the "Individual Defendants."

19.     Defendant Aadi is a clinical stage biopharmaceutical company developing precision therapies for genetically-defined cancers.  Aadi is a Delaware corporation and has its headquarters in Pacific Palisades, CA.

20.     Defendant Merger Sub is wholly owned subsidiary of the Company and a party to the Merger Agreement, created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

21.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and Section 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

22.     Personal jurisdiction exists over each defendant either because the defendants conduct business in or maintain operations in this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District as to render the exercise of jurisdiction over defendant by this Court permissible under traditional notions of fair play and substantial justice.

23.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because each of the

Individual Defendants, as Company officers or directors, has extensive contacts within this District and Aerpio stock is traded on the Nasdaq stock exchange which is located in this District.

## THE INDIVIDUAL DEFENDANTS' FIDUCAIRY DUTIES

24.     By reason of the Individual Defendants' positions with the Company as officers and/or directors, said individuals are in a fiduciary relationship with Aerpio and owe the Company the duties of due care, loyalty, and good faith.

25.     By virtue of their positions as directors and/or officers of Aerpio, the Individual Defendants, at all relevant times, had the power to control and influence, and did control and influence and cause Aerpio to engage in the practices complained of herein.

26.     Each of the Individual Defendants are required to act with due care, loyalty, good faith and in the best interests of the Company.  To diligently comply with these duties, directors of a corporation must:

a.  act with the requisite diligence and due care that is reasonable under the circumstances;

b.  act in the best interest of the Company;

c.  use reasonable means to obtain material information relating to a given action or decision;

d.  refrain from acts involving conflicts of interest between the fulfillment of their roles in the Company and the fulfillment of any other roles or their personal affairs;

e.  avoid competing against the company or exploiting any business opportunities of the company for their own benefit, or the benefit of others; and

      f.   disclose to the Company all information and documents relating to the company's affairs that they received by virtue of their positions in the Company.

27.    In accordance with their duties of loyalty and good faith, the Individual Defendants, as directors and/or officers of Aerpio, are obligated to refrain from:

      a.   participating in any transaction where the directors' or officers' loyalties are divided;

      b.   participating in any transaction where the directors or officers are entitled to receive personal financial benefit not equally shared by the Company or its public stockholders; and/or

      c.   unjustly enriching themselves at the expense or to the detriment of the Company or its stockholders.

28.    Plaintiff alleges herein that the Individual Defendants, separately and together, in connection with the Proposed Transaction, violated, and are violating, the fiduciary duties they owe to Aerpio, Plaintiff and the other public stockholders of Aerpio, including their duties of loyalty, good faith, and due care.

29.    As a result of the Individual Defendants' divided loyalties, Plaintiff will not receive adequate, fair or maximum value for his Aerpio common stock in the Proposed Transaction.

## SUBSTANTIVE ALLEGATIONS

### *Company Background*

30.    Aerpio, a biopharmaceutical company, focuses on developing and commercializing compounds that activate Tie2 for the treatment of ocular disease and vascular stabilization. The Company's lead product candidate is razuprotafib, a small molecule inhibitor of vascular

endothelial protein tyrosine phosphatase, which has completed phase IIb clinical trial for the treatment of non-proliferative diabetic retinopathy, as well as has completed phase II clinical trial for the treatment of patients with open angle glaucoma/ocular hypertension. It also develops ARP-1536, a humanized monoclonal antibody that is in preclinical development stage for the treatment of diabetic vascular complications, including nephropathy and diabetic macular edema; and bispecific antibody for the treatment for wet age-related macular degeneration and DME through intravitreal injection. Aerpio has a licensing and collaboration agreement with Gossamer Bio, Inc. for the development and commercialization of GB004, a selective stabilizer of hypoxia-inducible factor-1 alpha, which has completed Phase 1b clinical trial for the treatment of inflammatory bowel disease. The Company is headquartered in Cincinnati, Ohio.

31.     The Company reported its financial results in its most recent Press Release for the Fourth Quarter and Full Year 2020 Financial Results. Fourth Quarter ended with $42.6 million in cash and cash equivalents, as well as top line results from its Phase 2 trial of razuprotafib in open angle glaucoma and ocular hypertension.

32.     Aerpio Pharmaceuticals has received a consensus rating of Buy. According to analysts' consensus price target of $2.75, Aerpio Pharmaceuticals has a forecasted upside of 137.07% from its closing price of $1.16 before the announcement of the Proposed Transaction.

33.     The pipeline and analyst forecasts are not an anomaly, but rather, are indicative of a trend of continued success and future potential success by Aerpio. Clearly, the Company is likely to have tremendous future success and should command a much higher consideration than the amount contained within the Proposed Transaction.

34.     Despite this potential, the Individual Defendants have caused Aerpio to enter into the Proposed Transaction for insufficient consideration.

*The Flawed Sales Process*

35.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants, and was designed with only one concern in mind – to effectuate a sale of the Company to by any means necessary irrespective of the price obtained.

36.     Primarily, the Preliminary Proxy Statement gives no adequate explanation for why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than the dilution of the value of their shares.

37.     Moreover, the entirety of the Merger Consideration consists of Aadi stock; however, Aadi is not a public company. As such, Plaintiff is unable to evaluate the value of the pro-forma entity (in which he will have a significantly diluted interest), the value of the Merger Consideration, or whether to vote in favor of the Proposed Transaction.

38.     In addition, as stated in more detail below, the Preliminary Proxy Statement provides no projection data for Aerpio itself, making an independent assessment of Aerpio's potential standalone future value or the value of the pro-forma entity by Plaintiff all but impossible.

39.     Notably the Preliminary Proxy Statement indicates that in addition to Ladenburg, an unnamed "Second Financial Advisor" was engaged by the Company during the sales process. Despite this, the Preliminary Proxy Statement fails to provide any other relevant information regarding this engagement, including if this Second Financial Advisor provided a fairness opinion to the Company Board, what specific valuations or other work was done by the Second Financial Advisor relating to the sales process, and what compensation was given, or currently owed, to the Second Financial Advisor by the Company for this engagement.

40.     The Preliminary Proxy Statement is also unclear as to why multiple financial

advisors were engaged during the sales process.

41.     Moreover, while the Preliminary Proxy Statement indicates that a Transaction Committee of independent Board members was created to run the sales process, it fails to provide sufficient information regarding the Transaction Committee's powers, including if it had the power to select or veto any potential strategic alternative prior to review by the full Board.

42.     In addition, the Preliminary Proxy Statement is also unclear as to the nature of any non-disclosure agreement entered into between Aerpio and any potentially interested third party, including Aadi, as part of the sales process, and if the terms of any such agreements differed from one another, and in what way.

43.     It is not surprising, given this background to the overall sales process, that it was conducted in a completely inappropriate and misleading manner.

***The Proposed Transaction***

44.     On May 17, 2021, Aadi and Aerpio issued a joint press release announcing the Proposed Transaction.  The press release stated, in relevant part:

> **CINCINNATI, Ohio and PACIFIC PALISADES, California, May 17, 2021** – Aerpio Pharmaceuticals, Inc. ("Aerpio") (Nasdaq: ARPO), a biopharmaceutical company focused on developing compounds that activate Tie2, and Aadi Bioscience, Inc. ("Aadi"), a privately-held biopharmaceutical company focusing on precision therapies for genetically-defined cancers with alterations in mTOR pathway genes, announced their entry into a definitive merger agreement. Following the proposed merger, Aerpio will change its name to "Aadi Bioscience, Inc." and the combined public company will focus on advancing Aadi's lead product candidate, FYARRO™ (sirolimus albumin-bound nanoparticles for injectable suspension; *nab*-sirolimus; ABI-009).
>
> In support of the merger, Aerpio has entered into subscription agreements to raise $155 million in a Private Investment in Public Equity (PIPE) financing led by Acuta Capital Partners and KVP Capital and including Avoro Capital Advisors; Avoro Ventures; Venrock Healthcare Capital Partners; BVF Partners, L.P.; Vivo Capital; Alta Bioequities, L.P.; Rock Springs Capital; RTW Investments, LP; Acorn Bioventures; and Serrado Capital LLC as well as other undisclosed institutional investors.

The PIPE financing is expected to be consummated concurrently with the closing of the merger. Proceeds from the PIPE financing are intended to be used for commercialization of FYARRO in advanced malignant PEComa and a planned tumor-agnostic registrational trial in solid tumors harboring inactivating alterations in the mTOR pathway genes *TSC1* and *TSC2* expected to be initiated by the end of 2021. Aadi's first indication, advanced malignant PEComa, is an ultra-rare sarcoma enriched in *TSC1* and *TSC2* alterations. Aadi has received Orphan designation, Fast Track designation and Breakthrough Therapy designation from the FDA for FYARRO for the treatment of patients with advanced malignant PEComa. Together with the cash expected from both companies at closing, the net proceeds of the PIPE financing are expected to fund the company into 2024, enabling potential approval and commercial launch in PEComa as well as completion of a registrational trial in tumors harboring *TSC1* or *TSC2* inactivating alterations.

Caley Castelein, a board member of Aerpio and the proposed chairman of the combined company stated, "Aerpio's board of directors diligently undertook a comprehensive strategic review and has concluded that the proposed transaction with Aadi is in the best interest of our shareholders. We believe Aadi's late-stage development program may offer significant medical benefit to PEComa patients and important potential for patients with tumors harboring *TSC1* or *TSC2* inactivating alterations."

Dr. Neil Desai, founder and chief executive officer of Aadi, added, "FYARRO met its safety and efficacy endpoints in our study in patients with advanced malignant PEComa[2] and this finding supports our approach of targeting mTOR pathway altered cancers with FYARRO. We are excited about the next chapter of growth for Aadi, thankful for the support of our investors, and are energized to continue to develop important new treatment options for our patients."

Anupam Dalal, chief investment officer of Acuta Capital Partners stated, "Together with a group of renowned institutional investors, we are excited to partner with Aadi as it advances FYARRO and strives to unlock the potential of mTOR as a therapeutic target."

Upon closing of the transaction, the combined company will be led by Aadi's chief executive officer, Neil Desai, and headquartered in Los Angeles, California. Aadi's board members Neil Desai and Richard Maroun; Aadi's board observer Karin Hehenberger; and current Aerpio board members Anupam Dalal and Caley Castelein will be members of the board of directors of the combined company. In addition, Behzad Aghazadeh, managing partner of Avoro Capital Advisors and Avoro Ventures, will also join the board of the combined company upon the closing of the transaction.

**About the Proposed Transaction**

Under the terms of the merger agreement, shareholders of Aadi will receive shares of newly issued Aerpio common stock. On a pro forma basis, shareholders of Aadi

will own approximately 66.8% and shareholders of Aerpio will own approximately 33.2% of the combined company upon the closing of the merger, prior to the additional PIPE financing transaction. Following the closing of the concurrent PIPE financing, Aerpio shareholders will own approximately 14.7% of the combined company. The actual allocation is subject to adjustment based on Aerpio's cash balance at the time of closing.

The terms of the merger agreement contemplate that a non-transferable contingent value right (a "CVR") will be distributed to Aerpio shareholders as of immediately prior to the effective time of the merger, entitling CVR holders to receive net proceeds received by Aerpio, if any, associated with Aerpio's legacy assets. The terms and conditions of the CVRs will be pursuant to a CVR Agreement Aerpio will enter into prior to the closing of the merger (the "CVR Agreement").

The merger agreement has been approved by the boards of directors of both companies. The transaction is expected to close in the third quarter of 2021, subject to approval by Aerpio's shareholders, the completion of the PIPE financing, and customary closing conditions. The PIPE financing is expected to close concurrently with, and is conditioned upon, the closing of the merger.

### The Inadequate Merger Consideration

45.     Significantly, the Company's financial prospects and opportunities for future growth establish the inadequacy of the merger consideration, as well as it significantly undervalues the Company by diluting the stockholders' future interest in the surviving company. Moreover, the merger consideration does not adequately take into consideration the probable and predicted financial success of the Company.

46.     First, the compensation afforded under the Proposed Transaction to Company stockholders significantly undervalues the Company.  The proposed valuation does not adequately reflect the intrinsic value of the Company.  Moreover, the valuation does not adequately take into consideration the Company's potential financial success given its product pipeline.

47.     On May 17, 2021, the Company announced in a Press Release that its COVID drug protects against blood vessel dysfunction, saying, "In a preprint published in medRxiv that has yet to be peer-reviewed, researchers found that by activating the Tie2 receptor, AKB-9778 (razuprotafib) reversed a prothrombotic state (abnormal blood clotting) induced by COVID-19

plasma in endothelial cells (those that provide signaling between the bloodstream and surrounding tissue). During inflammation triggered by COVID-19, the Tie2 antagonist angiopoietin-2 (Angpt-2) is released from activated endothelial cells and inhibits Tie2, which can potential lead to thrombosis. 'Our findings provide novel rationale for current trials of Tie2 activating therapy with AKB-9778 in severe COVID-19 disease,' the researchers wrote."

48.     According to the Press Release for the Proposed Transaction, Aadi founder and CEO Neil Desai commented on the reasoning for the acquisition, "'FYARRO met its safety and efficacy endpoints in our study in patients with advanced malignant PEComa[2] and this finding supports our approach of targeting mTOR pathway altered cancers with FYARRO. We are excited about the next chapter of growth for Aadi, thankful for the support of our investors, and are energized to continue to develop important new treatment options for our patients.' Anupam Dalal, chief investment officer of Acuta Capital Partners stated, 'Together with a group of renowned institutional investors, we are excited to partner with Aadi as it advances FYARRO and strives to unlock the potential of mTOR as a therapeutic target.'"

49.     Clearly, the combined company's future is bright. Unfortunately, Plaintiff will be highly diluted and not able to fairly take part in that success. It is apparent from these statements and the facts set forth herein that this deal is designed to maximize benefits for Aadi at the expense of Aerpio and Plaintiff; Plaintiff as a Aerpio shareholder was not an overriding concern in the formation of the Proposed Transaction.

***Preclusive Deal Mechanisms***

50.     The Merger Agreement contains certain provisions that unduly benefit the Aadi by making an alternative transaction either prohibitively expensive or otherwise impossible. Notably, in the event of termination, the merger agreement requires Aerpio to pay up to $2 million to the

Aadi and/or its affiliates, if the Merger Agreement is terminated under certain circumstances. Moreover, under one circumstance, Aerpio must pay this termination fee even if it consummates any competing Acquisition Proposal (as defined in the Merger Agreement) *within 12 months following the termination* of the Merger Agreement. The termination fee will make the Company that much more expensive to acquire for potential purchasers. The termination fee in combination with other preclusive deal protection devices will all but ensure that no competing offer will be forthcoming.

51.     The Merger Agreement also contains a "No Solicitation" provision that restricts Aerpio from considering alternative acquisition proposals by, *inter alia*, constraining Aerpio's ability to solicit or communicate with potential acquirers or consider their proposals. Specifically, the provision prohibits the Company from directly or indirectly soliciting, initiating, proposing or inducing any alternative proposal, but permits the Board to consider an unsolicited bona fide "*Acquisition Proposal*."

52.     Moreover, the Merger Agreement further reduces the possibility of a topping offer from an unsolicited purchaser. Here, the Individual Defendants agreed to provide to the Aadi and/or its affiliates information in order to match any other offer, thus providing the Aadi access to the unsolicited bidder's financial information and giving Parent the ability to top the superior offer. Thus, a rival bidder is not likely to emerge with the cards stacked so much in favor of the Aadi.

53.     These provisions, individually and collectively, materially and improperly impede the Board's ability to fulfill its fiduciary duties with respect to fully and fairly investigating and pursuing other reasonable and more valuable proposals and alternatives in the best interests of the Company and Plaintiff.

54.    Accordingly, the Company's true value is compromised by the consideration offered in the Proposed Transaction.

***Potential Conflicts of Interest***

55.    The breakdown of the benefits of the deal indicate that Aerpio insiders are the primary beneficiaries of the Proposed Transaction, not Plaintiff or the Company's public stockholders.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff and the public stockholders of Aerpio.

56.    Notably, Company insiders, currently own large, illiquid portions of Company stock that will be exchanged for the merger consideration upon the consummation of the Proposed Transaction.  While the Preliminary Proxy Statement provides the following breakdown of stock ownership, it fails to provide an accounting of the amount of merger consideration they entitle the Company insiders to.

| Shares Beneficially Owned | | |
| --- | --- | --- |
| | Number | Percentage |
| **5% Stockholders:** | | |
| Satter Entities(1) | 5,621,835 | 11.9% |
| Entities affiliated with OrbiMed Private Investments V, LP(2) | 5,193,946 | 11.0% |
| Entities affiliated with Avoro Capital Advisors, LLC(3) | 4,500,000 | 9.5% |
| Entities affiliated with The Vanguard Group, Inc.(4) | 2,711,579 | 5.7% |
| **Named Executive Officers and Directors:** | | |
| Steven Prelack(5) | 107,095 | * |
| Caley Castelein(6) | 391,475 | * |
| Cheryl Cohen(7) | 133,292 | * |
| Anupam Dalal(8) | 113,431 | * |
| Pravin Dugel(9) | 129,351 | * |
| Joseph Gardner(10) | 1,593,140 | 3.3% |
| Kevin Peters(11) | 829,021 | 1.7% |
| Regina Marek(12) | 301,436 | * |
| All directors and executive officers as a group (8 persons) (13) | 3,598,241 | 7.2% |

57.    Moreover, upon the consummation of the Proposed Transaction, the Preliminary

Proxy indicates that each outstanding Company stock option, restricted share, or other equity award will be canceled and converted into the right to receive certain consideration according to the merger agreement as follows:

| Holder Name | Option Grant Date | Option Expiration Date | Option Exercise Price ($) | Number of Shares of Common Stock Underlying Option as of 6/14/2021 | Number of Vested Shares of Common Stock Underlying Option as of 6/14/2021 | Number of Shares of Common Stock Underlying Option that will Accelerate Vesting upon Effective Time of Merger | Total Value of Accelerated Vesting ($)(1) |
|---|---|---|---|---|---|---|---|
| Caley Castelein | 6/20/2018 | 6/20/2028 | 4.00 | 21,400 | 21,400 | — | — |
| | 6/18/2019 | 6/18/2029 | 0.96 | 21,400 | 21,400 | — | — |
| | 6/24/2020 | 6/24/2030 | 1.22 | 52,144 | — | 52,144 | — |
| | 1/31/2021 | 1/31/2031 | 1.46 | 17,857 | 4,464 | 13,393 | — |
| Cheryl Cohen | 6/20/2018 | 6/20/2028 | 4.00 | 42,800 | 28,676 | 14,124 | — |
| | 6/18/2019 | 6/18/2029 | 0.96 | 21,400 | 21,400 | — | — |
| | 6/24/2020 | 6/24/2030 | 1.22 | 52,144 | — | 52,144 | — |
| | 1/31/2021 | 1/31/2031 | 1.46 | 17,857 | 4,464 | 13,393 | — |
| | 6/16/2021(2) | 6/16/2031 | 1.86 | 100,000 | 100,000 | — | — |
| Anupam Dalal | 6/20/2018 | 6/20/2028 | 4.00 | 21,400 | 21,400 | — | — |
| | 6/18/2019 | 6/18/2029 | 0.96 | 21,400 | 21,400 | — | — |
| | 6/24/2020 | 6/24/2030 | 1.22 | 52,144 | — | 52,144 | — |
| | 1/31/2021 | 1/31/2031 | 1.46 | 17,857 | 4,464 | 13,393 | — |
| Pravin Dugel | 10/23/2014 | 10/23/2024 | 1.41 | 16,742 | 16,742 | — | — |
| | 6/20/2018 | 6/20/2028 | 4.00 | 21,400 | 21,400 | — | — |
| | 10/6/2018 | 10/6/2028 | 2.05 | 2,500 | 2,500 | — | — |
| | 6/18/2019 | 6/18/2029 | 0.96 | 21,400 | 21,400 | — | — |
| | 6/24/2020 | 6/24/2030 | 1.22 | 52,144 | — | 52,144 | — |
| | 1/31/2021 | 1/31/2031 | 1.46 | 17,857 | 4,464 | 13,393 | — |
| Steven Prelack | 6/20/2018 | 6/20/2028 | 4.00 | 21,400 | 21,400 | — | — |
| | 6/18/2019 | 6/18/2029 | 0.96 | 21,400 | 21,400 | — | — |
| | 6/24/2020 | 6/24/2030 | 1.22 | 52,144 | — | 52,144 | — |
| Joseph Gardner | 3/22/2012 | 3/22/2022 | 1.66 | 4,710 | 4,710 | — | — |
| | 3/22/2012 | 3/22/2022 | 1.66 | 23,017 | 23,017 | — | — |
| | 2/18/2014 | 2/18/2024 | 2.11 | 207,628 | 207,628 | — | — |
| | 12/14/2017 | 12/14/2027 | 5.50 | 118,112 | 118,112 | — | — |
| | 12/14/2017 | 12/14/2027 | 5.50 | 16,888 | 16,888 | — | — |
| | 4/23/2018 | 4/23/2028 | 3.59 | 96,065 | 74,460 | 21,605 | — |
| | 4/23/2018 | 4/23/2028 | 3.59 | 53,935 | 44,290 | 9,645 | — |
| | 2/15/2019 | 2/15/2029 | 3.27 | 23,107 | — | 23,107 | — |
| | 2/15/2019 | 2/15/2029 | 3.27 | 126,893 | 87,500 | 39,393 | — |
| | 5/14/2019 | 5/14/2029 | 1.04 | 349,350 | 174,675 | 174,675 | — |
| | 3/16/2020 | 3/16/2030 | 0.52 | 155,000 | 45,208 | 109,792 | 37,329.28 |
| Regina Marek | 8/9/2018 | 8/9/2028 | 3.49 | 80,000 | 56,667 | 23,333 | — |
| | 2/15/2019 | 2/15/2029 | 3.27 | 25,485 | 12,985 | 12,500 | — |
| | 2/15/2019 | 2/15/2029 | 3.27 | 4,515 | 4,515 | — | — |
| | 5/14/2019 | 5/14/2029 | 1.04 | 5,457 | 1 | 5,456 | — |

|  | 5/14/2019 | 5/14/2029 | 1.04 | 147,843 | 76,649 | 71,194 | — |
|---|---|---|---|---|---|---|---|
|  | 5/4/2019 | 5/4/2029 | 0.5588 | 44,300 | 24,917 | 19,383 | 5,838.16 |
|  | 3/16/2020 | 3/16/2030 | 0.5201 | 93,000 | 27,124 | 65,876 | 22,391.25 |
| Kevin Peters | 3/22/2012 | 3/22/2022 | 1.66 | 1,912 | 1,912 |  | — |
|  | 4/23/2018 | 4/23/2028 | 3.59 | 86,188 | 65,355 | 20,833 | — |
|  | 4/23/2018 | 4/26/2028 | 3.59 | 13,812 | 13,812 | — | — |
|  | 2/15/2019 | 2/15/2029 | 3.27 | 32,908 | 6,268 | 26,640 | — |
|  | 2/15/2019 | 2/15/2029 | 3.27 | 92,092 | 66,649 | 25,443 | — |
|  | 5/14/2019 | 5/14/2029 | 1.04 | 2 | 1 | 1 | — |
|  | 5/14/2019 | 5/14/2029 | 1.04 | 6,612 | — | 6,612 | — |
|  | 5/14/2019 | 5/14/2029 | 1.04 | 266,548 | 133,274 | 133,274 | — |
|  | 5/14/2019 | 5/14/2029 | 1.04 | 56,638 | 32,933 | 23,705 | — |
|  | 3/16/2020 | 3/16/2030 | 0.5201 | 129,000 | 37,624 | 91,376 | 31,058.70 |

58.     In addition, certain employment agreements with certain Aerpio executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant, and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff and Aerpio common stockholders and will be paid out as follows:

| Name | Estimated Value of Cash Severance Payments ($) |
|---|---|
| Joseph Gardner, Ph.D. | 999,350 |
| Regina Marek | 589,153 |
| Kevin G. Peters, M.D. | 804,680 |

59.     The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders

60.     Thus, while the Proposed Transaction is not in the best interests of Aerpio, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and

directors.

***The Materially Misleading and/or Incomplete Preliminary Proxy Statement***

61.     On June 21, 2021, the Aerpio Board and Aadi caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation of the Exchange Act and their fiduciary duties, failed to provide Plaintiff in his capacity as a Company stockholder with material information and/or provides materially misleading information critical to the total mix of information available concerning the financial and procedural fairness of the Proposed Transaction.

*<u>Omissions and/or Material Misrepresentations Concerning the Sales Process leading up to the Proposed Transaction</u>*

62.     Specifically, the Preliminary Proxy Statement fails to provide material information concerning the process conducted by the Company and the events leading up to the Proposed Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

    a.  Adequate reasoning as to why the Board agreed to a transaction in which the public stockholders of the Company, including Plaintiff, would receive nothing other than to have their shares diluted in value;

    b.  The Preliminary Proxy Statement fails to give adequate information regarding the engagement of the Second Financial Advisor, or any other not specifically named financial advisor(s), including information regarding:

        i.  What the specific role of the Second Financial Advisor, or any other not specifically named financial advisor(s), was in the sales process;

    ii.   The analyses performed by the Second Financial Advisor, or any other not specifically named financial advisor(s), in connection with the Proposed Transaction;

   iii.   How much compensation the Second Financial Advisor, or any other not specifically named financial advisor(s), was entitled to or has already received in compensation for its services throughout the sales process;

   iv.   The amount of compensation owed to Second Financial Advisor, or any other not specifically named financial advisor(s), contingent upon the consummation for the Proposed Transaction;

    i.   Whether the Second Financial Advisor, or any other not specifically named financial advisor(s), has performed past services for any parties to the Merger Agreement or their affiliates, including the timing and nature of such services, and the amount of compensation received by each financial advisor for providing such services;

    ii.   Why the engagement of additional advisors was necessary given that Ladenburg was already engaged and provided a fairness opinion;

c.  Sufficient information regarding the existence or nature of any non-disclosure agreement entered into between Aerpio and any potentially interested third party, including Aadi, as part of the sales process, and if the terms of any such agreements differed from one another; and

b.  Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders.

This information is necessary for stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

*Omissions and/or Materially Misrepresentations Concerning Aerpio and Aadi's Financial Projections*

63.     The Preliminary Proxy Statement fails to provide material information concerning financial projections provided by (or which should have bene provided by) Aerpio management and relied upon by Ladenburg in its analyses.

64.     The Preliminary Proxy Statement indicates that in connection with the rendering of Ladenburg's fairness opinion, Ladenburg, "Reviewed and analyzed certain internal financial analyses, projections as to cost and expenses, reports, preliminary internal market opportunity assumptions and other information concerning Aadi prepared by the management of Aerpio and its advisors and utilized per instruction of Aerpio."

65.     Accordingly, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Aerpio management provided to the Board and Ladenburg.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects."  *In re Netsmart Techs., Inc. S'holders Litig*., 924 A.2d 171, 201-203 (Del. Ch. 2007).

66.     Notably, the Preliminary Proxy Statement provides no projection information whatsoever for Aerpio itself, despite being wholly necessary to determine both the Company's

potential stand alone value and the value of the pro-forma company, both of which are highly relevant to Plaintiff as an Aerpio stockholder.

67.     With regard to the "*Unadjusted Aerpio Management Aadi Projections*" prepared by Aerpio Management, the Preliminary Proxy Statement fails to disclose material line items for the following metrics:

a.  PEComa Revenue, including the specific inputs and assumption used to determine the utilized assumption re: initial 10.0% penetration in 2022 to maximum market penetration of 85.0% in 2031 and assumes a total patient population of 100 patients;

b.  TSCI / TSC2 Revenue, including the specific inputs and assumptions used to determine the utilized assumptions re: initial penetration rate of 1.7% in 2021, which rises to a maximum rate of 83.1% by 2035 with a maximum year-over-year patient population increase of 1.4% assumption as well; and the assumed price increase of approximately 4% year-over-year in the U.S. market with a 15% net discount;

c.  Cost of goods sold ("COGS"), including the specific inputs and assumptions used to determine the utilized assumption that the cost of goods sold was assumed to be 18.6% of revenue;

d.  Research and Development ("R&D"), including the specific inputs and assumptions used to determine the utilized assumption that the R&D costs were assumed to be $65.5 million from 2028 onwards;

e.  Net Cash Flows from Operations, including all underlying metrics, inputs, and assumptions;

f.  Taxes, including the specific inputs and assumptions used to determine the utilized assumed tax rate of (28%);

g.  Unlevered Free Cash Flow, including all underlying metrics, inputs, and assumptions, including specifically the inputs and assumptions underlying the statement that "2024 to 2035 were adjusted downward to account for the probability of success given the probability of success for PE Coma (90%) and TSC1 / TSC2 (63.6%), which was determined by analyzing the "Estimation of clinical trial success rates and related parameters" white paper published in 2018"; and

h.  Risk Adjusted Unlevered Free Cash Flow, including all underlying metrics, inputs, and assumptions, including specifically the inputs and assumptions underlying the statement that "2024 to 2035 were adjusted downward to account for the probability of success given the probability of success for PE Coma (90%) and TSC1 / TSC2 (63.6%), which was determined by analyzing the "Estimation of clinical trial success rates and related parameters" white paper published in 2018"

68.   This information is necessary to provide Plaintiff in his capacity as a Company stockholder a complete and accurate picture of the sales process and its fairness.  Without this information, Plaintiff was not fully informed as to Defendants' actions, including those that may have been taken in bad faith, and cannot fairly assess the process.

69.   Without accurate projection data presented in the Preliminary Proxy Statement, Plaintiff is unable to properly evaluate the Company's true worth, Aadi's true worth, the accuracy of Ladenburg's financial analyses, or make an informed decision whether to vote their Company

stock in favor of the Proposed Transaction.  As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

_Omissions and/or Material Misrepresentations Concerning the Financial Analyses by Ladenburg_

70.     In the Preliminary Proxy, Ladenburg describes its respective fairness opinion and the various valuation analyses performed to render such opinion.  However, the descriptions fail to include necessary underlying data, support for conclusions, or the existence of, or basis for, underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the valuations or evaluate the fairness opinions.

71.     With respect to the _Implied Total Enterprise Value_ for Aadi, the Preliminary Proxy Statement fails to provide sufficient information regarding the following:

        a.  Aadi's projected indebtedness, cash and cash equivalents at closing.

72.     With respect to the _Discounted Cash Flow Analysis_ for Aadi, the Preliminary Proxy Statement fails to provide sufficient information regarding the following:

        a.  The specific inputs and adjustments made by Aerpio to Aadi's revenue assumptions in the years 2024 to 2035 by 90% for PEComa and 63.5% for TSC1/TSC2 (calculated by determining the likelihood of approval of each asset) to account for the probability of success given the clinical stage of development of Aadi's products;

        b.  The specific inputs and adjustments made by Aerpio to Aadi's cost of goods sold, royalty payments, research and development costs, general and administrative and commercialization expenses and then subtracted all the risk-adjusted expenses in the projection period from risk-adjusted revenue;

c.   The specific inputs and adjustments made by Aerpio in determining the assumed 28.0% corporate tax rate for purposes of calculating Aadi's unlevered free cash flow;

d.   The specific inputs and assumptions used to determine the utilized discount rate range of 12.9 to 16.9%;

e.   The weighted average cost of capital of the selected publicly traded companies; and

f.   The specific inputs and assumptions underlying the assumption that Aadi will have no terminal value after 2035.

73.     These disclosures are critical for Plaintiff in his capacity as a Company stockholder to be able to make an informed decision on whether to vote his shares in favor of the Proposed Transaction.

74.     Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes stockholder value and serves his interests.   Moreover, without the key financial information and related disclosures, Plaintiff in his capacity as a Company public stockholders cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests.   As such, the Board has breached their fiduciary duties by failing to include such information in the Preliminary Proxy Statement.

## FIRST COUNT

### Claim for Breach of Fiduciary Duties

### (Against the Individual Defendants)

75.     Plaintiff repeats all previous allegations as if set forth in full herein.

76.     The Individual Defendants have violated their fiduciary duties of care, loyalty and good faith owed to Plaintiff.

77.     By the acts, transactions and courses of conduct alleged herein, Defendants, individually and acting as a part of a common plan, are attempting to unfairly deprive Plaintiff of the true value of his investment in Aerpio.

78.     As demonstrated by the allegations above, the Individual Defendants failed to exercise the care required, and breached their duties of loyalty and good faith owed to Plaintiff by entering into the Proposed Transaction through a flawed and unfair process and failing to meet their obligations to make complete and accurate disclosures regarding this process and the data and analyses underlying the Proposed Transaction.

79.     Indeed, the Individual Defendants breached their duty of due care and candor by failing to disclose to Plaintiff all material information necessary for him to make an informed decision on whether to tender his shares in favor of the Proposed Transaction.

80.     The Individual Defendants dominate and control the business and corporate affairs of Aerpio, and are in possession of private corporate information concerning Aerpio's assets, business and future prospects.  Thus, there exists an imbalance and disparity of knowledge and economic power between them and Plaintiff which makes it inherently unfair for them to benefit their own interests to the exclusion of maximizing stockholder value without the disclosure of all proper material information.

81.     By reason of the foregoing acts, practices and course of conduct, the Individual Defendants have failed to exercise due care and diligence in the exercise of their fiduciary obligations toward Plaintiff.

82.     As a result of the actions of the Individual Defendants, Plaintiff will suffer

irreparable injury in that he has not and will be able to make an informed decision with respect to the Proposed Transaction.

83.     Unless the Individual Defendants are enjoined by the Court, they will continue to breach their fiduciary duties owed to Plaintiff, all to the irreparable harm of the Plaintiff.

84.     Plaintiff has no adequate remedy at law.  Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury which Defendants' actions threaten to inflict.

## SECOND COUNT

### Aiding and Abetting the Board's Breaches of Fiduciary Duty

### <u>Against Defendant Aerpio, Aadi, and Merger Sub</u>

85.     Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

86.     Defendant Aerpio, Aadi, and Merger Sub knowingly assisted the Individual Defendants' breaches of fiduciary duty in connection with the Proposed Acquisition, which, without such aid, would not have occurred.

87.     As a result of this conduct, Plaintiff has been and will be damaged in that he has been and will be prevented from being able to make an informed decision with respect to the Proposed Transaction.

88.     Plaintiff has no adequate remedy at law.

## THIRD COUNT

### Violations of Section 14(a) of the Exchange Act

### <u>(Against All Defendants)</u>

89.     Plaintiff repeats all previous allegations as if set forth in full herein.

90.     Defendants have disseminated the Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote their shares in favor of the Proposed Transaction.

91.     Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction.  Specifically, Section 14(a) provides that:

> It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

92.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

93.     The Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that

the Definitive Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

94.    The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

95.    The Individual Defendants were at least negligent in filing a Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Definitive Proxy Statement not misleading.

96.    The misrepresentations and omissions in the Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**FOURTH COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

97.    Plaintiff repeats all previous allegations as if set forth in full herein.

98.    The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

99.    The Individual Defendants were involved in drafting, producing, reviewing and/or

disseminating the materially false and misleading statements complained of herein. The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws. The Individual Defendants were able to, and did, control the contents of the Proxy Statement. The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

100. The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Aerpio's business, the information contained in its filings with the SEC, and its public statements. Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Proxy Statement was misleading. As a result, the Individual Defendants are responsible for the accuracy of the Proxy Statement and are therefore responsible and liable for the misrepresentations contained herein.

101. The Individual Defendants acted as controlling persons of Aerpio within the meaning of Section 20(a) of the Exchange Act. By reason of their position with the Company, the Individual Defendants had the power and authority to cause Aerpio to engage in the wrongful conduct complained of herein. The Individual Defendants controlled Aerpio and all of its employees. As alleged above, Aerpio is a primary violator of Section 14 of the Exchange Act and SEC Rule 14a-9. By reason of their conduct, the Individual Defendants are liable pursuant to section 20(a) of the Exchange Act.

WHEREFORE, Plaintiff demands injunctive relief, in his favor, and against the Defendants, as follows:

A.      Enjoining the Proposed Transaction;

B.      In the event Defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C.      Declaring and decreeing that the Merger Agreement was agreed to in breach of the fiduciary duties of the Individual Defendants and is therefore unlawful and unenforceable;

D.      Directing the Individual Defendants to exercise their fiduciary duties to commence a sale process that is reasonably designed to secure the best possible consideration for Aerpio and obtain a transaction which is in the best interests of Aerpio and its stockholders, including Plaintiff

E.      Directing the Individual Defendants to exercise their fiduciary duties to disseminate a Preliminary Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

F.      Directing defendants to account to Plaintiff for damages sustained because of the wrongs complained of herein;

G.      Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

H.      Granting such other and further relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

Dated: June 30, 2021

**BRODSKY & SMITH, LLC**

By: _____
Evan J. Smith
240 Mineola Boulevard
Mineola, NY  11501
Phone:  (516) 741-4977
Facsimile (561) 741-0626

*Counsel for Plaintiff*